argument first in U.S. v. Sklarva, 15-2752. Good morning, Your Honors. May it please the Court, Arza Feldman of CJA Counsel for the Defendant of the Law, Nicholas Sparla. Your Honors, this case presents issues of the Sixth Amendment right to a speedy trial due process, but at the end of the day, it's really about fundamental fairness. This is a defendant who sought a bench trial, had made certain concessions regarding the allegations against him, and asked the Court to decide one narrow issue as to whether or not the images that were on his computer traveled through interstate  This is a 30-month delay before the Court issued a verdict. Clearly, this pre-verdict delay on the Court's part... Was that over the objection of your client? Your Honor, the defendant has absolutely no obligation under the law to seek a verdict after trial. In fact, this Court, in U.S. v. Wray, indicating the defendant has no obligation. It is the obligation of the Court and it is the obligation of the government to bring a defendant to trial and to bring a defendant to verdict. The defendant... So, at no point was there an objection by your client? There was a post-verdict motion to dismiss... The only time that there was an objection is when the government made a motion... By your client? By my client. But he has no obligation to do that. I understand your position. I'm trying to determine whether, in fact, there was an objection. The only objection was during the time when the parties appeared in court. Counsel certainly sarcastically indicated that this was a very lengthy delay, and he didn't understand it. What about when he said, don't rush, at the status conference that was held November 2014? He told the judge affirmatively, don't rush. Well, you can say, don't rush, or you can say, don't rush. So, it's a matter of interpretation and his tone. I was not there. I'm appellate counsel, but certainly... We have a cold record. And you have a cold record. But in the motion... Any ordinary reading of those words means, don't rush. You don't have to provide me with a verdict. I can wait. But the... Is that a fair reading? I don't think so, because in the motion practice that came about after the verdict, counsel certainly clarified his tone and indicated that he sarcastically, tongue in cheek, indicated to the judge, why are you rushing now? And it wasn't... I understand that there's a cold record, but clearly we have an indication from counsel as to what his tone was and what his intention was when he made that remark. Your other point, I take it, is a legal point, that under these circumstances, the defendant is not under any obligation, and you cite U.S. v. Wray, to assert a speedy trial or a speedy verdict right. Is that correct? Correct. So, what do we, given that point, to make of the fact that Barker itself, on which you rely, lists as one of the factors the defendant's assertion of his speedy trial rights? Well, the issue in Barker was, I think, pretrial delay. Do you now rely on Barker in part? In part, but also... So, in relying on Barker, what do you make of that factor? Because I think that the court's interpretation of Barker, this court's interpretation of Barker, with respect to post-trial delay, is different than pretrial delay. And here, the defendant clearly, by narrowing the issues, was signaling to the court, I want my case heard, I want to fast-track it, I don't want a jury, I want you to decide this very narrow issue, and I need to know what to do with the rest of my life. Let me give you a hypothetical. If, in this case, the defendant had said, I affirmatively want you to delay rendering a verdict, would that have been problematic for you? That might constitute a waiver. If there was an affirmative assertion... But you're telling me that it doesn't matter what the defendant says or does, the obligation is on the court to ensure that a speedy verdict is the result? Well, the court certainly bears the burden, especially when there has been no affirmative waiver. As litigants, litigants sometimes have an opportunity in the court system to waive certain rights and obligations. But here, there was no waiver. He had his trial, and he waited. And he sat in his house with a bracelet, and he went to therapy, and he did what he was asked to do. But he didn't make an affirmative waiver. The facts are such that he simply waited, and waited, and waited. And the court itself admitted that the court was negligent in not rendering a verdict at the time that it should have rendered a verdict. And clearly, there was prejudice to the defendant. He was in his house. He couldn't move on with his life. He didn't know what direction he was facing. Was he going to go free? Was he going to go to jail? The stress on his family, the stress of living with uncertainty, I don't think any of us would want to live with that kind of uncertainty for 30 months on a case where you have yourself indicated to the court. That you just want them to decide this narrow issue, and wherever it falls, it falls. And he couldn't assert his right to appeal for a very lengthy period of time because there was a 30 month delay. There were all sorts of things that happened emotionally, financially, to this defendant through no fault of his own. And clearly, the fact that at the end of the day, he got a sentence which the court gave some lip service, but it was even over the minimum. So he didn't even get the minimum sentence after he had waited 30 months to hear what the judge was going to do. I don't think that there was any reasonable excuse that the court offered for what it did. I think that the pressure on the defendant was great, and I think that clearly, both the Sixth Amendment and due process and basic fundamental fairness requires the court to address this issue as requested in the brief. Can I just ask you about the interstate commerce aspect of your argument? I haven't seen any decisions that support your view that the content approach does not satisfy that element of both statutes before they were amended. Do you know of any cases that support your view that there has to be a demonstration that the internet transmission for the defendant came from another state at least? No, but I believe that in this circuit, it was a matter of first impression. I know there are cases in other circuits with respect to that issue. I would only ask the court to consider that if somebody receives, if any of us receive an image on our computers, for us to know that it came from China or Paraguay or Michigan or anything of that nature. I don't know how anybody would know that. It's not a knowledge requirement. I understand, but it's also an intent. There is no- No, but it's not, it's a- I understand, it's a jurisdictional issue. I understand- You could have a rule that seems to have been adopted by other circuits that have considered the issue. Yes. That just using the internet necessarily means that it is in interstate commerce. I understand that, Your Honor, and I have not- What's wrong with that rule? Well, it's a matter of proof, and it's not necessarily- No, it's not. It's a presumption. Well, but what's happening here is that the court is building into the law a presumption, and I understand that there is case law that undercuts the position of the defendant in this case with respect to that issue. And there's a way also of reading our own case law as suggesting that that is the rule. I mean, at least seven or eight of our colleagues have signed on to something that says something along those lines, right? I am aware of that, yes. Your Honor, I would like to touch on the issue of the guidelines and the- Why don't you take a minute to do that? And with respect to, we did file a letter with the court, and we'd like the court to consider that on November 1st, there were changes to the guidelines, and there were clarifications. They weren't amendments, and we would ask that the court not apply ex post facto, rule of ex post facto to that. Clearly, the commission, sentencing commission, has signaled that it wants these conditions to be specific. And the Seventh Circuit, even before the commission made those changes, has seen this as a matter of fairness and due process. And we would ask that this court adopt that view and understand that not every defendant that comes before court is the same and the guidelines should be tailored. There shouldn't just be standard guidelines given to- You mean conditions? Conditions, yeah, of post release given to every defendant that walks in a courtroom. It's important that the court consider that and consider what's occurred since this case. So is the rule that you are suggesting, or the principle, that with respect to every standard condition, the district court has got to specify why it is that the standard condition is appropriate? I think that the court has an obligation to at least review the standard conditions and see whether the standard conditions, as have obviously applied to the particular defendant. This goes on in many courts across this country, especially in New York, with conditions of probation, judges- Even when there's no objection from- Well, the problem is that the court says we're going to issue standard conditions, and the standard conditions come out after the fact. So I think that it's hard for a defendant to object to standard conditions that the defendant doesn't even see. Thank you very much. Thank you. You've reserved one minute for rebuttal. May it please the court, Joseph Karashevsky, appearing on behalf of the United States. Mr. Scavarla has given this court no reason to upset the conviction or sentence that was issued by the district court, and this court should affirm it. First of all, with regard to the speedy trial issue, the question of whether this delay that occurred between the end of the proof and a bench trial and the issuance of a verdict, there's a dearth of authority on that as to how or if the Sixth Amendment applies to that. Well, there's a Supreme Court case called Betterman that seems to say that this phase, that the subject of the speedy trial clause includes up to conviction, which is a verdict. Is that right? Yes, and I actually did acknowledge that in the brief. The government did acknowledge that in the brief. A dearth, but all it takes is one Supreme Court case. You're right, Judge. But however, in this case, the district court did apply the Barker v. Wingo factors and did so responsibly. There's no question that it exercised its discretion. So is there any limitation? So this is 30 months, but let's just say that the period of delay had been five years, which I can't imagine, but you never know, and there had been no objection from the defendant. At some point, isn't it incumbent upon a district court to actually render a verdict, notwithstanding the lack of an objection from either side, frankly? Well, I think, Judge, you have to apply the Barker factors, and you apply the length of delay, which is a threshold issue anyway. You don't get to the other three factors if you don't have a delay that's sufficiently long. And here, 30 months was long enough to trigger. But you agree that there could be a circumstance where there is no objection whatsoever from either party, but there still may be a speedy trial violation as a result of a delayed verdict. Well, if in applying the Barker v. Wingo factors, it indicates that the policy reasons behind those factors bear out the conclusion that there is a speedy trial violation or a constitutional speedy trial violation, and you look at the reason for the delay in here, the judge looked at the reason for the delay. And the reason for looking at that, why the delay occurred, is to make a determination as to whether the government gained any advantage from it. And here, it didn't. The trial was over, or at least the proof part of the trial was over. It's not like memories could fade, the defendant could lose witnesses, things like that. That didn't happen. So you apply those factors. Here, proof was over. And as a matter of fact, as my adversary has indicated, all along it was a legal issue that was being determined here. The defense was a purely legal one. So there's no possibility that memories fading or factual issues with regard to his guilt ever could have triggered a benefit for the government. What are we supposed to look at in the context of pre-verdict delay as opposed to pre-trial delay? Well, I think you look at the Barker. I mean, the best framework we have is Barker v. Wingo, and that's what the court did in this case. Well, I'm suggesting is there some other framework since Barker seems to be focused on trial rights and the subversion of or the trial advantage to one side or the other. But in a verdict, once the trial is done, shouldn't we look at other factors? Well, which is why, Judge, I think in looking at those factors, which are universally applied, you have a situation, this is a unique situation, you don't have many cases on this issue. I'm going back to your dearth of cases. So there are no cases really that talk about what factors we're supposed to consider in connection with a pre-verdict as opposed to pre-trial delay. I think the Barker v. Wingo factors are appropriate, and that's what the government is setting forth in our brief, that the Barker v. Wingo factors are appropriate, going on to the third factor, the assertion of the right. And here, I know, Judge, you have pointed out kind of a tension between the law stating, well, the defendant doesn't have a right or doesn't have an obligation to assert the right. However, if the defendant is saying, well, my constitutional speedy trial rights have been violated, you look to see whether he's been asserting the right. And here, there is no indication whatsoever that this defendant was interested at any time during the delay with getting it over with. What was the government's effort to speed up the verdict? The government made a motion to the court asking the court to deliver a verdict, citing the rights of the victims to have this case disposed of. And as a matter of fact, when the parties appeared before the court on that motion, Mr. Scavarella's counsel said, geez, I told the government not to make that motion. I didn't think it was a good idea for the government to pressure the court into delivering a verdict. How long was that motion after the completion of the short trial that took place? It was quite a bit of time afterwards. Probably halfway through, Your Honor. It wasn't halfway through. It was quite a ways through. Yes, it was quite a ways through. I think it was in January. I don't have the exact date, Your Honor, but yes, I concede that it was more than halfway through. Had there been some informal attempts to speed things up? Well, there's nothing in the record indicating that there was. I can't point to anything in the record if I were to answer that question. I thought there was something about an instruction not to call chambers anymore. Is that something? The government did call chambers and inquire. I don't know exactly when that was, how far along in the delay that was, but the AUSA assigned to the case did call chambers to ask what the delay was or ask if the verdict might be forthcoming. I don't have an exact date on that, Your Honor, but there was some effort in that regard. But here, I mean, we have a situation where the defendant, and even when the parties appeared in November 2014 for this status conference, that's when counsel said, look, I didn't think it was a good idea for the government to put pressure on the court to issue a decision, saying, Mr. Skivarla is doing fine, saying don't rush. And I understand the argument about, you know, it depends on what the inflection was, was he being sarcastic? But he followed that up with, don't rush, Mr. Skivarla is doing fine, which really, there's no reading of that, no possible reading of that to draw the conclusion that Mr. Skivarla was asserting his speedy trial rights at that point. Can I just ask you, what do we do with the special condition of supervised release? There was no fine or restitution ordered, and this condition about financial information was not part of the oral recitation at the sentencing. So I know it's a plain error review, but what do we do even before the guidelines were changed recently? Well, it is, Judge, and we've acknowledged that the district court did not articulate its reasons for imposing that, and that doesn't fall into the standard conditions exception to orally pronouncing it. In this case, though, our argument is that there's no, the error was not plain because it doesn't affect Mr. Skivarla's substantial rights. Here we have a situation where there was no restitution imposed. So this financial, this issue or this requirement that he provide financial information for the purpose of collecting restitution will never happen. And you can't think of another reason, or you didn't state another reason in your briefs for imposing that special condition? Well, no. I can't, I don't know that there was any other reason. There was, because that special condition was provide financial information for the collection of restitution or a fine, and no restitution or fine was ordered, so that was the specific condition. So there would be no reason other than if restitution was imposed. So we acknowledge that the court did not articulate a reason for imposing that, but it's harmless, or it's not plain error, and it's harmless, because there is no, there was no restitution imposed, and that will never come into play for that very reason. So for, and I'll stand on my brief with regard to the interstate commerce argument, and for those reasons this court should issue an order affirming the judgment of the district court in all respects. Thank you. Ms. Feldman. With respect to the court's question as to when that motion was made, I believe it was made 23 months after verdict. In addition, I would ask the court to look at pages 27 and 28 of my brief with respect to the invited error doctrine and the discussion that your honor had with me regarding whether or not there was any potential of you to somehow the defendant having consented to this or waived his right. And I would ask that the court consider that. As to- That's true, but that is, it seems embedded. If you accept the Barker factors, that is embedded as a factor in Barker. The defendant's assertion of his speedy trial rights. I mean, set aside the invited error doctrine, which is a specific doctrine, but the idea that you've got to object seems to be a factor in Barker. I would ask the court to consider its decision in Ray, where it clearly said that there's really no duty on the defendant. And with respect to the guidelines issue, I would indicate to the court that there's precedent indicating that it does not, necessarily apply in these kinds of situations to supervised release and the special conditions. And the fact that there's no harm, no foul is not really true, because we don't know what the future holds for any of us. And there may be harm and there may be foul by a special condition. No, he's not going to have to pay a restitution or a fine, though, right? Yes, that would be fair. How could you envision the use of that authority under that special condition of supervised release by the probation office? Because we don't, the new guidelines indicate that the disclosure of financial information has to be relevant to the collection. But the old standard indicated he could ask for anything. He could ask for any financial disclosure that the probation officer wants. And whether he will or not is not for us to decide. Isn't the condition here tied to a fine or restitution? Well, the new guidelines talk about that, but I think the old standards, it was very broad, and that's why they need to be tied. No, no, no. The condition here, in this case, the defendant shall provide the office, this is 223, which is the special conditions list in the final judgment, shall provide the U.S. Probation Office with access to any requested personal or business financial information. The U.S. Probation Office is authorized to release that information for use in the collection of any unpaid fine or restitution. That's the second part of it. But the question is, can he ask for anything he wants because he wants to, as opposed to what he does in terms of releasing it? And that, I think, is what the Sentencing Commission was looking at, and that's the kind of stuff that the Seventh Circuit was concerned with, not being specific enough so that a probation officer knows what his limitations are with respect to a defendant. Thank you very much. Thank you very much. We'll reserve the decision.